**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

RAHEEM SHABAZZ,

                                  Plaintiff,

    v.                                              No. 10-CV-1212
                                                          (NAM/DRH)

G.R. BEZIO, Correction LT., Clinton Annex
Correctional Facility; E. RICE, Correction Sgt.;
Clinton Annex Correctional Facility; and P. CHASE,
Correction Lt., Clinton Annex Correctional Facility,

                                  Defendants.

---

**APPEARANCES:**                                   **OF COUNSEL:**

RAHEEM SHABAZZ
Plaintiff Pro Se
96-A-5174
Wyoming Correctional Facility
Post Office Box 501
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN           CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the                      Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

   Plaintiff pro se Raheem Shabazz ("Shabazz"), an inmate in the custody of the New York

State Department of Correctional and Community Services ("DOCCS"), brings this action

pursuant to 42 U.S.C. § 1983 alleging that defendants, three DOcCS employees, violated

---

      [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

his constitutional rights under the Fourteenth Amendment. Compl. (Dkt. No. 1). Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 17. Shabazz opposes the motion. Dkt. No. 18. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related herein in the light most favorable to Shabazz as the non-moving party. See subsection II(A) infra.[2]

Upon Shabazz's arrival at the Clinton Annex, he was told by defendant Rice that he would have to cut off his dreadlocks unless he was a member of the Rastafarian religion. Compl. (Dkt. No. 1) at 5a. Shabazz was not a Rastafarian but was a member of the Moorish Science Temple. Dkt. No. 1 at 23. Shortly thereafter, Shabazz was interviewed by defendants Bezio and Rice, who again told Shabazz that unless he was a Rastafarian, DOCCS regulations did not permit him to wear (1) his hair in dreadlocks or (2) Rastafarian headpieces[3]. Compl. at 5a, ¶ 1. Bezio ordered Shabazz to either cut off his dreadlocks or go to keeplock[4]. Id. Shabazz refused to cut his dreadlocks, as he was willing to change his

---

[2] Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Various documents were all attached to Shabazz's complaint and have been considered on the present motion.

[3] In the second Misbehavior Report dated April 29, 2008, Bezio stated that Shabazz wore the same headpiece to the interview which was later confiscated from him and the basis upon which the Misbehavior Report was authored. Dkt. No. 1 at 23.

[4] Keeplock is

religion but not remove the hair which he had grown for over fifteen years. Dkt. No. 1 at 20. On April 14, 2008, Shabazz was issued a misbehavior report for failing to follow a direct order and to tie his hair back and was subsequently keeplocked. Compl. at 5a, ¶ 1; Dkt. No. 1 at 15.

Shabazz had a Tier II disciplinary hearing over which Bezio presided. Compl. at 5a, ¶ 2. Shabazz argued that Bezio could not be impartial as he had participated in the initial interview and investigation regarding whether or not Shabazz could keep his dreadlocks if he was not a Rastafarian. Id., ¶¶ 2-3. Bezio did not recuse himself and ultimately found Shabazz guilty of failing to follow a direct order and sentenced him to thirty days keeplock and loss of privileges. Compl. at 5a, ¶ 2; Dkt. No. 1 at 16-17. Shabazz appealed the disposition on the ground that Bezio was an inappropriate hearing officer and that Shabazz had attempted to change his religion to Rastafarian to be in compliance with the

---

> a form of confinement restricting an inmate to his or her cell, separating the inmate from others and depriving him or her of participation in normal prison activities. Inmate conditions while keeplocked are substantially the same as in the general population. While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day with one hour for exercise. Keeplocked inmates can leave their cells for showers, visits, medical exams, and counseling, and can have cell study, books, and periodicals. The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs and are usually allowed less time out of their cells on the weekends.

Webster v. Fischer, 694 F. Supp. 2d 163, 173 n.5 (N.D.N.Y. 2010) (internal citations omitted). Segregation in the Special Housing Unit "is a more restrictive form of disciplinary confinement than keeplock . . . ." Id. at 176 n.11 (citations omitted).

3

regulations, but could not do so until September 21, 2008. Dkt. No. 1 at 18. The Superintendent affirmed the disposition and Shabazz appealed to the Commissioner. Dkt. No. 1 at 19-22, 30, 35. That appeal was also denied. Dkt. No. 1 at 34.

On April 29, 2008, Shabazz was observed wearing a headpiece which was permitted only if one was a member of the Rastafarian faith. Compl. at 5a, ¶ 4. Bezio issued Shabazz another misbehavior report for failing to obey Bezio's previous order that the headpiece was only permitted for Rastafarian's to wear in the correctional facility. Compl. at 5a, ¶ 4; Dkt. No. 1 at 23. When Shabazz returned to his cell, the headpiece was confiscated. Dkt. No. 1 at 23.

Shabazz attended another Tier II disciplinary hearing.[5] Defendant Chase presided over that hearing and found Shabazz guilty, sentencing him to another thirty days of keeplock and loss of privileges. Compl. at 5b, ¶ 5. Shabazz appealed the disposition, contending that he did not recall having the conversation with Bezio about the headpiece and was "not in the habit of refusing direct orders" and, therefore, if Bezio would have told him not to wear the headpiece, Shabazz would not have worn it. Dkt. No. 1 at 26-27. Additionally, Shabazz contends that Bezio harassed him and that he and Chase conspired during the second Tier II hearing because the testimony was "rehearsed." Dkt. No. 1 at 28. The Superintendent affirmed the disposition and Shabazz appealed the finding. Dkt. No. 1 at 32.

On March 16, 2009, Shabazz received an administrative reversal for both disciplinary

---

[5]DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier II hearing, or disciplinary hearing, is required whenever disciplinary penalties not exceeding thirty days may be imposed. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a).

4

charges and his records were ordered expunged. Compl. at 5b, ¶ 7; Dkt. No. 1 at 13-14. Shabazz also filed an Article 78[6] petition in State Court. Compl. at 5b, ¶ 6. The petition was dismissed as moot given the administrative reversal. Compl. at 5b, ¶ 6; Dkt. No. 1 at 48-49. Shabazz also filed an action in the Court of Claims which was dismissed on both procedural grounds and the expiration of the statute of limitations. Dkt. No. 1 at 71-74. This action followed.

## II. Discussion

Shabazz contends that his Fourteenth Amendment rights were violated when defendant Bezio acted as a hearing officer, because he was biased and his actions were in contravention of DOCCS disciplinary regulations. Defendants argue that Shabazz's claims are meritless and that they are entitled to qualified immunity.

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[and t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)

---

[6]N.Y.C.P.L.R. art. 78 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

(holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) I, 129 S. Ct. at 1949) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

6

## B. Fourteenth Amendment

### 1. Failure to Follow DOCS Regulations

"Violations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements . . . ." Dixon v. Goord, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y. 2002) (internal quotation marks and citations omitted); see also Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003) ("Although state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, state statutes do not create a federally protected due process entitlements to specific state-mandated procedures.") (internal citations omitted). "State procedures designed to protect substantive liberty interests entitled to protection under the federal constitution do not themselves give rise to additional substantive liberty interests." Blouin v. Spitzer, 356 F.3d 348, 363 (2d Cir. 2004) (citations omitted). Thus, defendants' actions must be judged based upon the underlying constitutional provisions entitling those actions to protection as opposed to those procedures which the state may deem appropriate. Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990) (citations omitted).

In this case, Shabazz claims that because Bezio acted in contravention of the state guidelines for conducting an administrative hearing,[7] his due process rights were also violated. Dkt. No. 18 at 3(1)(D)-(F), (H)-(I). However, as discussed infra, regardless of defendants' non-conformance with the state law, the procedures which Shabazz was

---

[7] New York law states that "[n]o person who has participated in any investigation of the acts [related to the misbehavior report] shall be a hearing officer at a hearing related to those acts . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 253.1(b).

7

afforded were sufficient to satisfy due process. Therefore, defendants' motion to dismiss should be granted with respect to those issues.

### 2. Due Process

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a segregated confinement alone is insufficient to establish an atypical and significant deprivation. The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered. Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998). The Second Circuit has noted that where the period of segregated confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin. Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000).

Shabazz served two separate thirty day sentences in segregated confinement with both related to the length of his hair and headwear. If viewed as separate incidents for purposes of Sandin, judgment may be appropriate at this stage as neither sentence exceeded thirty days. See Colon, 215 F.3d at 230. However, if the two sentences are aggregated, the total

8

time in segregated confinement exceeded thirty days and judgment on this claim at this stage may not be appropriate. See Sims v. Artuz, 230 F.3d 14, 23-24 (2d Cir.2000) (citing Sealey v. Giltner, 197 F.3d 578, 587 n. 7 (2d Cir. 1999)).  Viewing the complaint in the light most favorable to Shabazz, and crediting the fact that he was sentenced to, and was segregated for, a combined total of more than thirty days in keeplock, questions of fact exist as to the liberty interest asserted by him.  Accordingly, defendants' motion on this ground should be denied.

### 3. Fair and Impartial Hearing

While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural process.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  A prisoner is "entitled to advance written notice . . . ; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).  The only aspect of Shabazz's hearing about which he complains is that Bezio served as the hearing officer as he had conducted the underlying investigation.

Prisoners have a constitutional right to a fair and impartial hearing officer. See, e.g., Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004).  A fair and impartial hearing officer is one that "does not prejudge the evidence and who cannot say . . . how he would assess evidence that he has not yet seen." Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990) (citing Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) ("[I]t would be improper for prison officials to decide the disposition of a case before it was heard.") (citations omitted)).

However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges . . . [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted); see also Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). The Supreme Court held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] . . ." and the Second Circuit has held that the test is whether there was "'reliable evidence' of the inmate's guilt." Luna v. Pico, 356 F.3d 481, 487-88 (2d Cir. 2004); see also Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Shabazz clarifies his argument in his opposition to state that the specific constitutional violation he was subjected to was that Bezio was both the interviewing and investigating officer as well as the hearing officer who found him guilty. Dkt. No. 18 at 2(1)(B)-(C). In this case, it is clear that Shabazz's disposition was based on ample evidence and that, even viewing the evidence in the light most favorable to Shabazz, Bezio was not biased. First, there is no dispute that DOCCS regulations required Shabazz to be a registered Rastafarian in order to wear his hair in dreadlocks or possess and wear the head piece. Additionally, there is no dispute that Shabazz was not a registered Rastafarian and would not be able to change his religious preferences for some time. Shabazz was informed that without registration as a Rastafarian, DOCCS regulations required a hair cut or for him to be keeplocked. Shabazz refused to cut his dreadlocks and, thus was in violation of regulations

because he continued to wear dreadlocks and Rastafarian religious accessories without having registered with DOCCS as a Rastafarian.  Thus reliable evidence existed to support the Bezio's finding of guilt at the time they were determined, despite the later administrative reversal and expungement.  Second, there is nothing in the record to indicate that Bezio had predetermined the disposition at the disciplinary hearing as the record demonstrates that Bezio only found Shabazz guilty of one of the two charges after the disciplinary hearing concluded.

Moreover, to the extent that Shabazz also contends that the second hearing was constitutionally infirm, such allegations must also fail for similar reasons.  In Shabazz's administrative appeals, though not articulated in his claims here, he seeks reversal of his second disciplinary hearing because defendant Chase (1) decided to rely on Bezio's testimony concerning the conversation he and Shabazz had at the initial interview and (2) retrieved Bezio from the facility to provide personal testimony, instead of via telephone, giving them an alleged opportunity to rehearse the questioning.  Dkt. No. 1 at 27-28.  Even construing the facts in the light most favorable to Shabazz, there still exists reliable evidence to support the second disciplinary determination.

As previously stated, there was no dispute surrounding the facility rules or Shabazz's stated religious preferences.  Accordingly, Shabazz was not permitted to wear dreadlocks or Rastafarian headpieces.  Furthermore, Shabazz stated that he could not remember whether he was warned about the headpiece.  He did not disagree with Bezio's recitation of the events but simply could not recall what was said.  Therefore, Shabazz did not dispute that he was warned about both his hair and headpieces with regard to the facility's rules and protocols.  Thus, the evidence showed that Shabazz was not a registered Rastafarian,

he had been warned that he could not wear or participate in Rastafarian traditions unless or until he converted his religious affiliation, he could not complete that conversion immediately, and he was seen wearing the headgear again, disobeying the direct order he had previously received during the initial interview. Defendants' motion should be granted on this ground.

### C. Qualified Immunity

Defendants claim that even if Shabazz's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed

<u>supra</u>, it has not been shown that defendants violated Shabazz's constitutional rights. Accordingly, defendants' motion should be granted in the alternative on this ground.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 17) be **GRANTED** as to all defendants and all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 2, 2011

    Albany, New York

*David R. Homer*
United States Magistrate Judge